[Civ. No. 3601.   First Appellate District, Division One.—December 15, 1920.]

## H. S. DUFF, Respondent, v. M. A. ANDERSON, Appellant.

[1] REPLEVIN—DEFAULT BY BUYER—TENDER OF BILL OF SALE—EVIDENCE—FINDING.—In this action of replevin to obtain possession of certain cattle sold to defendant under a conditional sale contract, in which plaintiff reserved title in himself until the purchase price was fully paid, the evidence, though weak and conflicting, was sufficient to justify the finding of the trial court to the effect that plaintiff tendered defendant a bill of sale at the time he demanded payment of the amount due on the contract or in default of such payment possession of the cattle.

[2] ID.—OBJECTION TO BILL OF SALE—WAIVER.—Under section 2076 of the Code of Civil Procedure, it devolves upon the buyer to specify any objection he has to a bill of sale at the time of the tender of that instrument to him, otherwise that objection is waived.

[3] ID.—TUBERCULAR TEST OF CATTLE—DUTY OF BUYER TO MAKE—FINDING.—The provision for a tubercular test of the cattle having been incorporated in the conditional sale contract at the suggestion of the buyer and, after the delivery of the possession of the cattle to him, he having proceeded to take the steps necessary to secure such test, the court was justified in finding that the parties considered it to be, and that it was, the duty of the buyer to have such test made.

[4] ID.—OFFER OF COMPROMISE—RIGHT TO CREDIT — JUDGMENT — ABSENCE OF INJURY.—The fact that the seller of the cattle, at a time when all the payments under the contract were past due, without consideration but as an offer of compromise, agreed to give a certain credit on the contract because certain of the cattle had died, and agreed to receive back certain cattle that did not meet the tubercular test and in final settlement deduct an agreed amount from the contract price, did not entitle the buyer to a credit of those amounts on the contract price; and the buyer having been in default under the contract at the time performance was demanded, even though such credits had been allowed, he was not injured by the act of the seller in demanding a sum in excess of that due, nor by the action of the court in declaring the buyer to be the owner and entitled to the possession of the cattle, including those that did not pass the tubercular test, the court not having awarded the buyer any money or their value, in case delivery of any of the cattle could not be had.

[5] ID.—RIGHT TO INCREASE—UNSUPPORTED JUDGMENT.—In such action of replevin, neither the pleadings nor the findings having contained any suggestion as to the amount of, or as to the description of any increase of cattle, it was error to award plaintiff possession in general terms "of all the increase of cattle had while in possession of defendant" or a specified sum "per head damages if possession could not be had."

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Kauke and Ernest Klette for Appellant.

Geo. Cosgrove for Respondent.

WOOD, P. J., pro tem.—This is an ordinary action of replevin by which plaintiff obtained judgment for the possession of certain cattle theretofore delivered to defendant under an agreement of purchase and sale. Defendant appeals.

By the terms of an agreement which bears date April 3, 1918, respondent agreed to sell, and appellant to buy, thirty-five dairy cows for $4,375. Upon the execution of the agreement $1,000 was paid. The balance, with interest at eight per cent per annum, was payable within one year in any event, and installment payments were to be made on account in the sum of $150 per month on the fifteenth day of each and every month, commencing May 15, 1918, title to remain in seller until the purchase price was fully paid. The purchaser was given possession of the cattle upon the execution of the agreement, and was to receive a bill of sale upon full payment of the contract price.

The following covenant was inserted in the agreement: "The said stock and all thereof shall be held for six months from the date hereof and subject to what is commonly called Tubercular Test made in conformity to the laws of said State. All cows passing such test shall be accepted by the second party at that time. If any of said cows do not pass such test at such time, the same shall be held for an additional period of six months and a like test shall be made of them during that time, and all thereof which pass

said test shall be accepted by the second party. At the end of one year from the date hereof if any of said cows fail to pass said test, then and in that event, the first party will withdraw the same from this contract and agreement and deduct $125 for each cow from the said purchase price, but the second party shall pay the first party $6.00 per month for each and every month of the milking period from the date hereof up to the time any animal is withdrawn by the first party for the reason that it does not pass said test.''

During the six months following the execution of the agreement appellant made payments on account aggregating $765.17, but never made any thereafter.

On May 10th, and after the entire balance of the purchase price, with interest, amounting to $2,897.53, was due and unpaid, respondent delivered to appellant a written demand as follows:

"Fresno, May 10, 1919.

"To M. A. Anderson:

"Herewith is tendered to you a bill of sale conveying title to the cattle now in your possession belonging to me and the same will be delivered on payment of the sum of $2,897.53 being the amount due on contract for the sale of the same and demand is hereby made upon you for the said amount or in default of such payment possession of the cattle described in said bill of sale is hereby demanded.

"H. S. DUFF.''

[1] The first point urged by appellant is that as all the payments were due at the time of the demand, he could not be put in default until a bill of sale was tendered to him, and that the evidence is insufficient to support the finding that such a tender was made.

Upon the trial the appellant denied that respondent had exhibited or left with him any paper other than the written demand. The respondent, as a witness, upon being questioned whether he tendered the bill of sale, said that he did not; that he did not remember; that he had the bill of sale in his possession at the time, and that it was his recollection that if Mr. Anderson (appellant) made any kind of settlement he was to turn over to him the bill of sale. Upon cross-examination, however, he said, "I think I exhibited this [bill of sale]. Q. You would not be sure?

A. No, but my instructions were to do it, and I think I did. Q. You did not leave it with him? A. I don't think I did." The evidence, at best, is weak. Still it was the province of the trial judge, and not ours, to pass upon its weight.

It appears that respondent went to the appellant's ranch, acting under the instruction of his attorney; that he was contemplating the immediate commencement of an action against appellant; that he had the bill of sale with him; that the written demand expressly stated that he tendered a bill of sale; that he had made unsuccessful and repeated demands upon appellant for money during the previous four months; and that he had slight, if any, faith in the defendant making any settlement when he made the demand. In view of all the surrounding circumstances we think that the finding is supported by the evidence, and shows an actual tender as found by the court.

[2] It is next claimed that the bill of sale, as tendered, was insufficient, in that it contains no description of the cattle except by reference "to the agreement hereto attached," while the evidence shows that no such copy was attached.

The court found upon sufficient evidence that there was an actual tender of the bill of sale, and under section 2076 of the Code of Civil Procedure it devolved upon appellant at such time to specify any objection he had as to the instrument; otherwise it was waived.

[3] It is urged that it was the duty of respondent to have the tubercular test of the stock made, and that by failing so to do he himself was in default and cannot enforce the contract. The evidence shows that the provision providing for a test was incorporated in the contract at the suggestion of appellant. The cattle were in his possession. The clause was for his benefit, and it was his exclusive right to waive the test. The appellant did not have the test made until April 12, 1919, and more than a year after the date of the contract. According to his own testimony he wrote to the state veterinary, and received word that it was thought that the man would be there at a certain time to make the test, which was to be about six months after the making of the contract. Afterward he received word

that the man would come as soon as he could, and he got him as early as possible. Respondent testified: "I asked him several times for his test and it was always a case of they had written and when he got the test he would let me know, and was to let me know before the test was made, because I wanted to be present."

If there was any uncertainty as to who was to make the test, this evidence shows that the court was warranted in believing from the conduct of the parties that they considered it to be, and that it was, the duty of appellant to do so. "Subsequent acts of the parties, showing the construction they have put upon the agreement themselves, are to be looked to by the court, and in some cases may be controlling." (9 Cyc. 588, and cases there cited.)

[4] It is next urged that appellant was entitled to an additional credit of $1,875 on the contract price, being $250 for four head of cattle that died and $1,625 for thirteen head that did not pass the tubercular test which appellant had had made on April 12, 1919, more than one year after the date of the contract. This contention is based upon an instrument in writing signed by respondent and delivered to appellant, which is as follows:

"Mr. M. A. Anderson:

"In regard to your complaint regarding the four cows that died, I will give you credit for $62.50 per head and will also receive the thirteen head turned down on test, and in final settlement deduct the amount from the contract.

"H. S. DUFF."

The court found upon sufficient evidence that there was no consideration for the instrument; that it was made at a time when all the payments on the contract were due, and as an offer of compromise. It appears that according to appellant's own construction of the contract there was at least $734.53 unpaid on the agreement at the time of the demand. In any event he was not injured by a demand in excess of the amount due. All the cattle referred to in the agreement, except the four that died, were taken by plaintiff upon a writ at the time of the commencement of the action. Defendant in his answer admitted that plaintiff was entitled to the possession of the thirteen head mentioned. The court found that all the cattle described in the agreement, except

these four cows that died, were so taken by plaintiff upon the writ and retained by him. The judgment declares plaintiff to be the owner and entitled to the possession, but does not award plaintiff any money or their value, if delivery cannot be had.

It is claimed that the court seriously erred in admitting evidence to the effect, and in finding, that defendant failed to feed or pasture the livestock as required by the contract, inasmuch as no claim of such failure was ever made by plaintiff until the time of the trial. Assuming that the action of the court was erroneous, it must be disregarded, unless it appear that a different result would have been probable if the error had not occurred. (Sec. 475, Code Civ. Proc.) It is obvious that the respondent would be entitled to judgment even if this finding had been in favor of appellant.

Appellant failed to make his payments, although frequently urged so to do. He paid no money after December 24, 1918, nor did he make a tender of any after that date. While he alleged in his answer that at the time of the demand he offered to pay to plaintiff all sums due, it is apparent that his talk upon that subject at the time of the demand was a mere subterfuge to further postpone the day of settlement, while he was receiving the income from the dairy cows.

[5] Objection is made to the improper insertion of a clause in the judgment, following a description of the cattle of which plaintiff is adjudged entitled to the possession. There appears in neither the pleadings nor findings any suggestion as to the amount of, or as to the description of any increase, of cattle; yet plaintiff by the judgment was awarded possession in general terms "of all the increase of cattle had while in possession of defendant or seven dollars per head damages if possession could not be had." In practical effect it allows plaintiff *carte blanche* to levy a writ of execution upon the property of defendant.

The judgment is modified by striking out the following words: "together with the increase thereof while in possession of defendant M. A. Anderson, or if delivery of the increase now in possession of defendant cannot be

had then for seven dollars per head damages for its detention.'' In all other respects the judgment is affirmed, each party to pay his own costs upon appeal.

Kerrigan, J., and Richards, J., concurred.